**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RON LANCASTER,

      Plaintiff - Appellant,

      v.

INDEPENDENT SCHOOL DISTRICT NO. 5, also known as Jenks Public Schools, Tulsa County, Oklahoma, separately and Kirby Lehman in his official capacity as superintendent and Terri Almon, Mark Sharp, Mike Baab and Ben Maples as members of the Jenks Public Schools Board of Education; KIRBY LEHMAN, individually; BILLIE MILLS, individually; TERRI ALMON, individually; MARK SHARP, individually; MIKE BAAB, individually; BEN MAPLES, individually and in their official capacities as members of the Jenks Public Schools Board of Education,

      Defendants - Appellees.

Nos. 97-5063 & 97-5208

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 96-C-337-BU )**

---

Submitted on the briefs:[*]

Stephen L. Andrew and D. Kevin Ikenberry, Stephen L. Andrew & Associates, Tulsa, Oklahoma, for Plaintiff-Appellant.

J. Douglas Mann and Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa Oklahoma, and William S. Leach, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **PORFILIO** , **McKAY** , and **TACHA** , Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Plaintiff brought an action under 42 U.S.C. § 1983, alleging a violation of his rights under the First and Fourteenth Amendments in connection with his suspension as head football coach of the Jenks High School football team and the subsequent nonrenewal of his coaching contract. On February 25, 1997, the Northern District of Oklahoma granted defendants' motion for summary judgment on all claims. On March 13, 1997, defendants filed for attorney's fees under Fed. R. Civ. P. 37. Defendants were awarded $3,773 for attorney's fees on August 11, 1997, after plaintiff filed his notice of appeal. Plaintiff appeals the district court's ruling on summary judgment and the award of attorney's fees. We take

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

2

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

Plaintiff Ron Lancaster was employed with the Jenks School District in Oklahoma for over five years, beginning in January 1991. Each year, plaintiff executed a standard teacher's contract and a separate extra duty assignment contract. Under the extra duty contract, plaintiff was compensated additionally for acting as the head coach of the Jenks High School football team and supervising a summer football camp. The extra duty assignment contract recited that there was no "tenure" for the assignment, the assignment was subject to termination at any time without a reason or a hearing, the assignment was completely severable from plaintiff's teaching contract, and the assignment was for a one year term with no assurances that it would be renewed in subsequent years.

On September 8, 1995, although the Jenks High School football team was ahead 17-7 against its opponent, plaintiff decided to talk to the team to prevent another unexpected loss such as one the team had experienced the previous year. Plaintiff asked everyone except the football players to leave the locker room and shut the door behind them. Plaintiff asked the starters to come forward. When three starters disobeyed the request, plaintiff grabbed the players by their jerseys and/or shoulder pads and brought them forward. In his deposition, plaintiff

3

admitted he yelled in a very loud voice, he may have cussed at the starters, and his face was red with veins popping out on his neck. Plaintiff claims his conduct was "an act" intended to motivate the team.

After the football game, Dr. Kirby Lehman, Superintendent of the Jenks School District, heard rumors through his daughter, a Jenks High School band member, that "something bad" had happened in the locker room. Dr. Lehman contacted Mike Means, Jenks High School Principal, to investigate the situation. Teachers and parents of players reported statements made by players regarding the halftime incident. Those statements accused the plaintiff of yelling, using profanity, grabbing players, and kicking equipment during his halftime speech.

In mid-September 1995, Dr. Lehman suspended Lancaster from his coaching position pending further investigation of the alleged incident. The suspension did not affect plaintiff's regular teaching duties or his income. After a few days of investigation, plaintiff was reinstated contingent upon his agreement to abide by certain terms designed to prevent any repetition of the alleged conduct. At the reinstatement meeting, Dr. Lehman advised plaintiff of complaints against him regarding his treatment of football players, including the halftime incident. Dr. Lehman then wrote Mr. Lancaster a letter summarizing the reinstatement meeting, reviewing the allegations against him, and formally reprimanding him for his behavior. Following the meeting, the Jenks School

4

District issued a press release describing plaintiff's suspension as an "internal personnel issue" that was being resolved cooperatively. The press release stated plaintiff would return to his head football coaching position.

On September 19, 1995, the Tulsa World reported plaintiff's reinstatement. The plaintiff was quoted as saying that he had been told there was "no conclusive evidence" to warrant his suspension and "[t]here was no formal complaint against me and really nothing that came out of this of any kind." In November 1995, plaintiff was quoted again in the Tulsa World as saying "no one has ever given us an explanation (for the one-game suspension). There is still a stigma attached to what happened."

On January 16, 1996, plaintiff met with Mr. Means and Tommy Burns, then athletic director, to discuss his request for a mutual press release exonerating him of any wrongdoing. The parties could not agree on the content of a mutual press release and none was issued.

On February 15, 1996, plaintiff was informed by Mr. Means and Mr. Burns of their recommendation that the Jenks Board of Education not renew plaintiff's extra duty contract for the 1996-97 school year. Mr. Means supported his written recommendation to the Board with attachments detailing Lancaster's inappropriate behavior and failure to follow school rules on a number of occasions dating back to early 1992. At a February 19, 1996 Board meeting,

5

which the plaintiff attended, the Board unanimously voted not to renew plaintiff's extra duty coaching contract. At a later meeting, the Board voted to continue employing plaintiff in his teaching capacity for the 1996-97 school year. The plaintiff resigned his employment from the Jenks School District on July 29, 1996.

In a thorough opinion, the district court granted defendant's motion for summary judgment as to plaintiff's section 1983 claims and dismissed the remaining state law claims. See Lancaster v. Independent Sch. Dist. No. 5, No. 96-C-337-BU, slip op. (N.D. Okla. Feb. 26, 1997). On appeal, plaintiff contends summary judgment should have been denied on the section 1983 claims because the record reveals genuine issues of material fact. Plaintiff also appeals the dismissal of his state law claims. Finally, plaintiff appeals the district court's award of attorney's fees to the defendants. For the reasons set forth below, we affirm the decision of the district court on each of the issues raised by the plaintiff.

## DISCUSSION

### I.    Section 1983 Claims

We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court. See Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if

6

there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

### A. First Amendment Claim

Lancaster contends the school board violated his First Amendment rights by terminating him as a result of his constitutionally protected remarks to the Tulsa World. We affirm the district court on the basis that Lancaster's speeches were not matters of public concern.

Whether a public employer's action in response to an employee's speech violates the employee's First Amendment rights depends on whether the speech was related to a matter of public concern, or simply related to internal office affairs. See Connick v. Myers, 461 U.S. 138, 143-49 (1983). The pertinent inquiry is whether plaintiff spoke as a citizen or an employee. See Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990) (per curiam).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147; see also Bishop v. Wood, 426 U.S. 341, 349 (1976). Whether speech relates only to personal matters as an employee as opposed to public matters as a citizen depends on the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. If the

7

matter is of public concern, the court must balance plaintiff's interest as a citizen against the state's interest "in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Ed., 391 U.S. 563, 568 (1968).

Lancaster's comments in the Tulsa World do not constitute matters of "public concern." Media publicity of a dispute is not determinative of whether a public employee's speech was a matter of public concern. See Koch v. City of Hutchinson, 847 F.2d 1436, 1448 (10th Cir. 1988) (en banc). In analyzing whether speech is of public concern, "many courts have particularly focused on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties." Id. at 1445; see also Wulf v. City of Wichita, 883 F.2d 842, 857 (10th Cir. 1989) (finding letter written by police officer dealt with matter of public concern because it alleged, inter alia, misuse of public funds). Lancaster's statements were self-serving. The comments were not intended to disclose evidence of wrongdoing, inefficiency, or malfeasance on the part of the defendants. Because plaintiff's grievances related to an internal personnel dispute, the content was only of private concern. See Vukadinovich v. Bartels, 853 F.2d 1387 (7th Cir. 1988) (holding that plaintiff's published comments regarding school district's decision to decline renewal of coaching

8

contract were an expression of plaintiff's private dissatisfaction with his termination and not an issue of public concern). Considering the context and content of the speeches, we hold Lancaster's speech was of a personal nature and thus was not protected by the First Amendment.

Our finding that the speech was not of public concern makes it unnecessary for the court to address whether the interests of the defendant outweighed the plaintiff's interests, whether plaintiff's speech was knowingly false, and whether plaintiff's speech was a motivating or a substantial factor for the Board's employment decision. See Wulf, 883 F.2d at 856-57 (noting these are factors to be considered if speech is found to be of public concern).

## B. Property Interest Claim

Lancaster also alleged that his termination violated the Fourteenth Amendment. According to the plaintiff, the board denied him due process of law required by Oklahoma's Teacher Due Process Act of 1990 ("TDPA"), OKLA. STAT. tit. 70, §§ 6-101.20-.30 (West 1998). The district court found that the plaintiff's extra assignment contract did not grant him a property interest in the head coaching position for the purposes of due process. We agree.

In reviewing a plaintiff's claim that he was deprived of property without due process of law, we must first determine whether plaintiff possessed a protected property interest such that due process protections are applicable. If so,

9

then we decide whether plaintiff was afforded an appropriate level of process. See Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994). The question of whether Lancaster possesses a protected property interest in his coaching position must be determined in reference to state law. See Casias v. City of Raton, 738 F.2d 393, 394 (10th Cir. 1984).

The TDPA is a statutory scheme governing the employment of public school teachers in Oklahoma. The statute creates property interests in employment, which merit constitutional protection. See, e.g., Parker v. Independent Sch. Dist. No. I-003, 82 F.3d 952, 953 (10th Cir. 1996); Short v. Kiamichi Area Vocational-Technical Sch. Dist. No. 7, 761 P.2d 472, 475-77 (Okla. 1988). The Oklahoma Supreme Court has held that "extra duty assignments are too far removed from . . . primary teaching responsibilities . . . to be protected under the [TDPA]." Parker, 82 F.3d at 954 (quoting Maupin v. Independent Sch. Dist. No. 26, 632 P.2d 396, 399 (Okla. 1981)) (alteration in original).

Plaintiff argues that despite the fact that his coaching contract was labeled an "extra duty" contract, coaching football was not an extra duty for him but rather his primary teaching responsibility. The district court found that coaching was not part of plaintiff's primary teaching duties at Jenks High School, and we agree. Plaintiff's evidentiary support that football players received grades for

10

performance and that plaintiff's teaching evaluations reflected his coaching ability does not convince us otherwise. In short, plaintiff's extra duty coaching assignment is not covered by the TDPA. [1]

Further, tenured teachers have a protected interest only in continued employment, not in a particular position. See Maupin, 632 P.2d at 399. Plaintiff retained his teaching job. Therefore, even if the extra duty assignment were covered by the TDPA, the nonrenewal of plaintiff's extra duty assignment would not have deprived plaintiff of a property interest.

In his reply brief, Lancaster raises a theory of constructive discharge in association with his due process claim. We consider that issue waived due to "the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply." Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1994).

## C. Liberty Interest Claim

Lancaster also alleges that the defendants' actions deprived him of liberty

---

[1]After the parties filed their briefs in this appeal, the Oklahoma Court of Appeals ruled in Lancaster's companion state court action and confirmed that Lancaster's extra duty coaching assignment is not subject to the TDPA. See Lancaster v. Independent Sch. Dist. No. 5, No. 89,450, slip op. at 4 (Okla. Ct. App. Sept. 16, 1997). The Oklahoma Supreme Court subsequently denied certiorari.

without due process of law. Lancaster contends the defendants, by failing to provide the public with an explanation for his suspension and leaving people to speculate, publicly stigmatized him and consequently damaged his reputation. [2]

Injury to reputation alone, however, is not a deprivation of a liberty interest. See Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Paul v. Davis, 424 U.S. 693, 709 (1976). To invoke the procedural protection of the due process clause through a claim of injury to a liberty interest, a discharged public employee must allege, for example, that defendants imposed a "stigma or other disability *that foreclosed his freedom to take advantage of other employment opportunities*." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972) (emphasis added). Lancaster does not make such a claim. At any rate, in light of the fact that Lancaster fairly quickly obtained a teaching/coaching position for the next school year, such a claim would be weak.

Also fatal to plaintiff's liberty interest claim is the fact that the defendants made no public statements disparaging Lancaster or harming his standing or associations in the community. The Supreme Court has "rejected the theory that the mere fact of dismissal, *absent some publicizing of the reasons for the action*,

---

[2]In violation of Rule 28(a)(6) of the Federal Rules of Appellate Procedure, plaintiff fails to provide a single citation to authority in support of his liberty interest argument. Losing arguments are not excused from the briefing requirements of Rule 28 simply because they are more difficult to support.

could amount to a stigma infringing one's liberty." Board of Curators v. Horowitz , 435 U.S. 78, 83 (1978) (citing Bishop v. Wood , 426 U.S. 341 (1976)); see also Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 547 n.13 (1985) (noting that "the failure to allege that the reasons for the dismissal were published dooms" plaintiff's liberty interest claim); Dickeson v. Quarberg , 844 F.2d 1435, 1440 (10th Cir. 1988) ("A liberty interest is not violated when one is discharged without public disclosure of the reasons for the discharge."). Thus, speculative rumors circulating in the community as a result of defendants' *failure* to publish do not establish a deprivation of a liberty interest.

While the injury to reputation asserted by the plaintiff may be actionable under state tort law [3], it falls far short of a constitutional violation. See Paul, 424 U.S. at 697-99 (holding that conduct actionable as state claim for defamation does not rise to level of liberty deprivation simply because government officials are involved). Accordingly, we affirm the district court's entry of summary judgment for the defendants.

### D. Religious Discrimination Claim

Plaintiff's final constitutional claim is a religious discrimination claim. It is not clear from plaintiff's submissions to this court or to the court below

---

[3] Because we affirm the dismissal of plaintiff's state law claims, see infra , we express no opinion regarding the merits of his state "false light" claim.

13

whether he is relying on the First Amendment or on an equal protection theory. Regardless, the only evidence that plaintiff presents in support of his claim is his own deposition testimony in which he provides hearsay information, passed on to him by third parties, that school board members said the next coach hired would have a "strong Christian background."

"Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted . . . in opposition to, summary judgment." Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995). Were the third parties themselves to testify regarding the statements they allegedly overheard, there would not be a problem "because the statement would not be offered for its truth, but instead for the mere fact it was said." Id.; see Fed. R. Evid. 801(c). But here, plaintiff offers his own testimony for the truth of what the third parties said to him, i.e., that board members made statements about the next coach's religious background. No exceptions to the hearsay rule apply here to make the evidence admissible. Because we cannot consider the plaintiff's hearsay evidence, plaintiff fails to prove a genuine issue of material fact exists to defeat summary judgment. We affirm the district court.

## II. Dismissal of State Law Claims

The preceding analysis effectively disposes of all of Lancaster's claims arising under federal law. Thus, the bases for federal subject matter jurisdiction

14

have been extinguished. Under these circumstances, the district court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). We affirm the district court's decision to dismiss without prejudice plaintiff's state law claims for the torts of false light and outrage, tortious interference with employment contract, and breach of contract.

### III.    Attorney's Fees

Finally, the plaintiff appeals the award of attorney's fees to the defendants. The facts relevant to that award are as follows. In November 1997, Mr. Lancaster failed to appear for his scheduled deposition and filed a motion for a protective order to prevent the defendants from taking his deposition. In response, the defendants moved for a protective order to prevent plaintiff from obtaining discovery from the defendants until he submitted himself for a deposition. The magistrate overseeing discovery granted the defendants' request and denied the plaintiff's motion in a minute order issued November 18, 1996. The minute order also stated that the court would consider an application for attorney's fees from the defendants based on Mr. Lancaster's failure to appear at his deposition. On March 13, 1997 (about two weeks after the court granted defendants' motion for

15

summary judgment on the section 1983 claims), the defendants filed a motion for attorney's fees based on the time spent appearing for Mr. Lancaster's no-show deposition and addressing the subsequent motions. On August 11, 1997, the magistrate granted defendants' motion and awarded them $3,773 in attorney's fees. The magistrate explained that the award was justified by Fed. R. Civ. P. 26(c) and 37(a)(4)(A), which govern fee awards associated with motions for protective orders, and by Rule 37(d), which provides for attorney's fees when a party fails to appear for a deposition.

Although he does not contest the underlying justification for the attorney's fees awards, plaintiff alleges the award is invalid for four reasons: (1) defendants' motion for attorney's fees was untimely and therefore waived; (2) plaintiff's notice of appeal divested the district court of jurisdiction, leaving it powerless to award attorney's fees in August; and (3) the scope of the award exceeded limits allegedly set by the magistrate's initial order, and (4) the amount of the award is unreasonable. We review the district court's decision to award attorney's fees under Rule 37 for abuse of discretion. See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc. , 82 F.3d 1533, 1555 (10th Cir.), cert. denied , 117 S. Ct. 297 (1996).

### A.    Timeliness of Motion for Attorney's Fees

The plaintiff argues that the attorney's fees award was in error because the right to Rule 37 fees is waived upon entry of judgment. The text of Rule 37

itself contains no time limitations on motions, and there are no cases on point in this circuit. Nonetheless, the plaintiff cites several cases from other circuits in support of his position that Rule 37 motions must be filed before entry of judgment. See, e.g., Mercy v. County of Suffolk, 748 F.2d 52, 55-56 (2d Cir. 1984). In the absence of Tenth Circuit precedent or a clear directive from Rule 37 itself, we decline to impose a flat prohibition on Rule 37 motions after entry of judgment. However, a Rule 37 motion for sanctions should be filed without unreasonable delay. Cf. Brandt v. Vulcan, 30 F.3d 752, 756 (7th Cir. 1994) (party bringing motion for sanctions under Rule 37(b)(2) must do so without unreasonable delay). Defendants filed their motion about two weeks after summary judgment was entered and within four months after the notice by the judge that he would entertain such a motion. The plaintiff has not alleged prejudice as a result of the timing of the motion. Under these circumstances, we find no unreasonable delay.

## B.     Jurisdiction

The plaintiff alleges next that after he filed his notice of appeal, the district court was deprived of jurisdiction and therefore possessed no power to grant the Rule 37 motion. This argument lacks merit. Although filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, see Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S.

17

373, 379 (1985), the district court retains jurisdiction over "collateral matters not involved in the appeal," Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987). Attorney's fees awards are collateral matters over which the district court retains jurisdiction. See id. ("[E]ven after a timely notice of appeal is filed, a district court may retain jurisdiction to determine the propriety and amount of attorney's fees."); Smith v. Phillips, 881 F.2d 902, 905 n. 9 (10th Cir. 1989) ("Even after an appeal has been taken the district court may consider applications for attorneys' fees because they are considered wholly collateral to the merits . . . .") (citing, inter alia, Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988)). While the cases typically discuss attorney's fees awards in the context of statutory grants of attorney's fees to the prevailing party, see, e.g., Budinich, 486 U.S. at 197, we see no basis to distinguish those cases from one like the present case in which fee awards are granted as sanctions. In either context, the award is collateral to the merits of the underlying action. Accordingly, we conclude the district court had jurisdiction to grant the Rule 37 motion.

## C.    Scope of Award

Plaintiff argues that the November 18 minute order issued by the magistrate limited any potential attorney's fees award to the time involved in attending the aborted deposition and did not extend to fees related to the motions

18

for protective orders. Addressing this argument below, the magistrate stated that "it was not the Court's intention to impose such a limitation." We defer to the magistrate's interpretation of his own words. At any rate, a plain reading of the November 18 order reveals no limitation. While the order does note that the court would consider a Rule 37 motion relating to defendants' appearance for plaintiff's no-show deposition, it is silent as to any other possible fee awards. Thus, the district court did not abuse its discretion by awarding attorney's fees incurred for preparing and responding to motions for protective orders, which were directly related to plaintiff's failure to cooperate in discovery.

### D. Amount of Attorney's Fees Award

We review the amount of attorney's fees awarded by the district court for abuse of discretion; underlying factual findings are reviewed for clear error. See Public Serv. Co. v. Continental Cas. Co., 26 F.3d 1508, 1520 (10th Cir. 1994). Plaintiff contends "the amount of time the Defendants' attorneys claim to have spent . . . was clearly excessive and unreasonable." Plaintiff does not support this conclusory assertion with any evidence or argument. The attorney's fee of $3,773 for defendant's efforts to obtain plaintiff's deposition is supported by defendant's documentation. The district court did not abuse its discretion in awarding that amount.

### CONCLUSION

19

Based upon the foregoing conclusions, we cannot find error in the district court's grant of summary judgment on plaintiff's federal claims, the dismissal of the state law claims, or the award of attorney's fees.  Therefore, we AFFIRM the decisions of the district court.