**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID DERRINGER,

        Plaintiff-Appellant,

v.

MICKEY C. CHAPEL; JENNIFER
CHAPEL; JUDGE THOMAS FITCH,

        Defendants-Appellees.

Nos. 02-2315 & 02-2329
(D.C. No. CIV-02-974 WPJ/RLP)
(D.N.M.)

---

DAVID DERRINGER,

        Plaintiff-Appellant,

v.

MICK CHAPEL; JENNIFER
CHAPEL; JOSEPH ALARID;
CYNTHIA FRY; LYNN PICKARD;
THOMAS FITCH, Judge; COMEAU,
MALDEGEN, TEMPLEMAN &
INDALL, Law Firm,

        Defendants-Appellees.

Nos. 03-2181 & 03-2215
(D.C. No. CIV-03-804 WPJ/RHS)
(D.N.M.)

---

SUSAN NEVITT,

        Plaintiff-Appellant,

v.

THOMAS FITCH,

No. 03-2218
(D.C. No. CIV-03-155-JP/WDS)
(D.N.M.)

Defendant-Appellee.

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

These related appeals by David Derringer and his wife, Susan Nevitt, have

their genesis in a dispute between appellants and their downstream neighbors, the

Chapels, over water rights. [1] An understanding of these background facts is

necessary to our disposition of these appeals.

*I. The State Court Proceedings*

In 1993, Susan Nevitt and her mother, Norma Nevitt, purchased property

along Harris Creek in Catron County, New Mexico that was upstream from

property owned by Mick and Jennifer Chapel. In May 1994, the Chapels brought

suit against the Nevitts in New Mexico state court seeking to establish the

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] After examining the briefs and appellate records, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

seniority of their water rights and to enjoin the Nevitts from interfering with them. Judge Fitch presided over the case. In September 1995, before the case went to trial, David Derringer acquired an interest in the Nevitts' property via a special warranty deed from the Nevitts to themselves and Derringer as joint tenants. The case proceeded solely against the Nevitts, however, and the jury rendered a verdict in favor of the Chapels. [2] On May 17, 1996, in accordance with the verdict, Judge Fitch entered judgment against the Nevitts and permanently enjoined them, their successors and assigns, from interfering with the Chapels' water rights. The Nevitts appealed the judgment and injunction to the New Mexico Court of Appeals, which affirmed in a decision issued September 23, 1996.

In July 2000, the Chapels sought to re-open the action against the Nevitts to enforce the May 1996 injunction, which they claimed the Nevitts were violating. Again, Judge Fitch presided over the case. On July 17, Derringer filed numerous pleadings in the action, including a motion to be joined as a party-defendant based on his interest in the property and a motion to remove the injunction on the ground that it was invalid. Judge Fitch subsequently permitted Derringer to

---

[2] In its June 13, 2003 order in No. 23,815, *Chapel v. Nevitt*, the New Mexico Court of Appeals determined there was nothing in the record showing that Derringer attempted to become a party to these proceedings.

become a defendant in the action with the consent of the other parties to the litigation.

In April 2001, Derringer filed a motion to have Judge Fitch recuse based on his alleged relationship with the Chapels before he became a judge. Judge Fitch denied the motion and the case proceeded to an evidentiary hearing. On September 10, 2001, Judge Fitch issued a decision concluding that the Nevitts and Derringer had violated the May 1996 injunction, that the Chapels were entitled to a mandatory injunction requiring these defendants to remove any and all obstructions to the flow of water in Harris Creek, and that the Chapels were entitled to a continuing injunction prohibiting these defendants from appropriating any water in Harris Creek until the Chapels had received their appropriation each year. Judge Fitch entered a final judgment and injunction against the Nevitts and Derringer on September 24, 2001.

The Nevitts and Derringer appealed the September 24 judgment and injunction to the New Mexico Court of Appeals. Among the twenty-two issues they raised on appeal were arguments that they had a superior claim to the water rights than did the Chapels; that Judge Fitch was biased by his previous relationship with the Chapels and should have recused; that the original proceedings were infirm because Derringer was a necessary and indispensable party to them and Judge Fitch had no jurisdiction to proceed in Derringer's absence; and that without Derringer's presence in the original proceedings,

the May 1996 injunction was invalid.  The New Mexico Court of Appeals rejected defendants' arguments and affirmed the judgment and injunction in a fourteen-page decision issued June 13, 2002.

In August 2002, the Chapels returned to state court to enforce the 1996 injunction and the 2001 judgment.  Judge Fitch presided over these proceedings, as well.  Following a trial in January 2003 at which Derringer appeared but the Nevitts did not, Judge Fitch entered a decision on January 28, 2003, awarding the Chapels compensatory and punitive damages, as well as attorney fees and costs.  Judge Fitch also ruled that unless Derringer and the Nevitts removed two dams from their property within forty-five days, the Chapels would have the right to enter on the property to remove the dams themselves.  Judge Fitch further ordered that Derringer and the Nevitts would be fined $100 per day for every day that they were in violation of the 1996 injunction.  By order entered February 13, 2003, Judge Fitch also imposed filing restrictions against Derringer and the Nevitts prohibiting them from filing any papers in connection with the case except through an attorney or with prior written leave of court, unless the papers were in response to another party's filing or were instituting an appeal.

Derringer and the Nevitts appealed Judge Fitch's January 28 and February 13 decisions to the New Mexico Court of Appeals.  That court affirmed all Judge Fitch's rulings in a Memorandum Opinion issued June 13, 2003.  In its

decision, the state appellate court decided a host of issues that Derringer and Susan Nevitt have raised in these federal proceedings. Among other things, the New Mexico Court of Appeals ruled that Judge Fitch was not required to recuse from the proceedings to enforce the 1996 injunction; that Judge Fitch did not violate the civil rights of Derringer or the Nevitts when he gave the Chapels the right to enter on the Nevitt/Derringer property to enforce the injunction; that it was incumbent upon Derringer to notify the trial court when he obtained an interest in the Nevitts' property and to request to be made a party, but the record did not show he did so; that the record did not support Derringer's allegations that he was prevented from participating in the proceedings leading up to the 1996 injunction; that Derringer was properly bound to the terms of the 1996 injunction when he was made a party to the 2000 enforcement action; and that there was no inherent jurisdictional defect in the 1996 judgment and injunction. The court also ruled that the filing restrictions imposed by Judge Fitch did not violate the Nevitts' or Derringer's due process rights.

## II. The Federal Court Proceedings

### A. District Court Case No. CIV-02-0974

On August 7, 2002, Derringer filed Case No. CIV-02-0974 in New Mexico federal district court against the Chapels and Judge Fitch, claiming that they had violated his civil rights. All the claims in Derringer's twenty-nine-page complaint

were based either on his dispute of the Chapels' water rights or on events that occurred in the state-court proceedings. In his complaint, Derringer sought damages against the Chapels and Judge Fitch and sought to have the Chapels criminally prosecuted and Judge Fitch removed from the bench. Derringer later filed a motion to have Judge Fitch recused from ongoing state-court proceedings.

Judge Fitch filed a motion to dismiss Derringer's claims on the ground that he was absolutely immune. The district court agreed and entered an order and judgment on October 1, 2002, dismissing all claims against Judge Fitch. By separate order of October 1, the district court denied Derringer's motion to have Judge Fitch recused from ongoing state-court proceedings, noting that the motion was frivolous because the federal court had no power to order the recusal of a state-court judge. On October 7, Derringer filed a motion to reconsider the order dismissing the claims against Judge Fitch, which the court construed as a motion under Fed. R. Civ. P. 59 and denied by order entered October 9, 2002.

The Chapels also filed a motion to dismiss Derringer's claims against them on a variety of grounds, including lack of subject matter jurisdiction. The district court agreed that it lacked subject matter jurisdiction over Derringer's claims against the Chapels under the *Rooker-Feldman* doctrine. [3] Accordingly, the court

---

[3]     The *Rooker-Feldman* doctrine takes its names from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

entered an order and judgment on October 3 dismissing the action against the Chapels for lack of subject matter jurisdiction. Derringer filed a motion to reconsider on October 15, which the court construed as a motion under Rule 59 and denied by order entered October 17, 2002. Derringer filed a notice of appeal on October 25, 2002, from the court's orders dismissing the claims against Judge Fitch, denying the motion to recuse Judge Fitch, and dismissing the action against the Chapels. This court docketed that appeal as No. 02-2315.

Meanwhile, on October 10, the Chapels filed a motion for sanctions against Derringer under Rule 11 and a separate motion for attorney fees against Derringer under 42 U.S.C. § 1988. Derringer objected to both motions on October 22, and by order entered November 18, 2002, the court denied the motion for sanctions but granted the motion for fees. Because the Chapels' fee motion had not specified an amount, the court directed the Chapels to file a brief setting forth the amount of their requested fees and the reasonableness thereof, and gave Derringer fourteen days to respond. Derringer filed a notice of appeal from the November 18 order on December 2, 2002. This court docketed that appeal as No. 02-2329. On January 3, 2003, the district court issued its final order granting fees to the Chapels in the amount of $6,161.20.

*1. Appeal No. 02-2315*

"We review determinations of absolute immunity de novo." *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000). "[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). The Supreme Court has recognized only two exceptions to this immunity from suit: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" and (2) "a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction." *Id.* at 11-12. Derringer's claims against Judge Fitch all arise out of actions he has taken, or failed to take, in his judicial capacity. Thus, Judge Fitch is entitled to absolute immunity unless he acted in the absence of all jurisdiction.

The bulk of Derringer's briefing on appeal is nothing but a tirade of factually unsupported, impertinent, scandalous, and irrelevant accusations against the Chapels, Judge Fitch, and others. Buried in this vituperative rhetoric is an argument that Judge Fitch is not entitled to absolute immunity because he had no jurisdiction to proceed with the original state court action in the absence of a necessary and indispensable party, namely Derringer. This argument confuses an action taken in excess of jurisdiction–for which there is absolute immunity–with an action taken in the absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (holding that judge's action "in excess of his authority" will not deprive judge of immunity).

-9-

"[A] judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances," whereas "[t]here is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial." *Duty v. City of Springdale*, 42 F.3d 460, 462 (8th Cir. 1994) (quotations omitted). So long as a judge acts with "at least a semblance of subject matter jurisdiction," he is immune. *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983).

Here, Judge Fitch had subject-matter jurisdiction over the water-rights controversy before him, and even if the particular circumstances of the case negated his authority to act, he was still entitled to absolute immunity. Accordingly, the district court did not err in dismissing Derringer's damages claims against Judge Fitch based on the judge's absolute immunity. Nor did the district court err in denying as frivolous Derringer's motion to have Judge Fitch recused from ongoing state-court proceedings, for the court clearly had no power to grant such relief. [4]

Turning to the dismissal of the action against the Chapels for lack of subject-matter jurisdiction, we review that ruling de novo. *Kiowa Indian Tribe of*

---

[4] Nor did the court have any power to have Judge Fitch removed from the bench, as requested in Derringer's complaint.

*Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998). The *Rooker-Feldman* doctrine precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). Thus, the doctrine "prohibits a lower federal court from considering [both] claims actually decided by a state court and claims 'inextricably intertwined' with a prior state-court judgment." *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002). This prohibition extends to decisions of the lower and intermediate state courts, as well as the highest state court. *Id.* at 474-75.

Derringer's claims against the Chapels challenge the propriety of the decisions made by Judge Fitch and the New Mexico Court of Appeals. His claims were either directly decided by one or both of those courts, or are inextricably intertwined with their decisions. The *Rooker-Feldman* doctrine therefore precludes the federal court's review of his claims.

Derringer attempts to avoid the doctrine's preclusive effect by arguing that he did not have a full and fair opportunity to litigate his claims in state court because he was not included in the proceedings leading up to the original May 17, 1996 judgment and injunction. The record does not support Derringer's

contention that he has not had an adequate opportunity to litigate his claims in the state court. Even if the record did support his claim, however, it would be to no avail, because "Rooker-Feldman bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate [his] claims." *Id.* at 478. Accordingly, the district court did not err in dismissing Derringer's claims against the Chapels for lack of subject-matter jurisdiction.

## 2. Appeal No. 02-2329

In this appeal, Derringer challenges the district court's award of attorney fees to the Chapels. We initially questioned our jurisdiction to hear this appeal because Derringer filed his notice of appeal from the November 18 order granting fees before the district court entered an order setting the amount of the fees. "[A]n award of attorney's fees is final for purposes of appeal only after the amount is determined." *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir. 1986). The November 18 order was therefore not a final, appealable order when Derringer filed his December 2 notice of appeal.

The district court subsequently entered a final order on fees on January 3, 2003. Derringer then had thirty days to file a notice of appeal, which he failed to do. Within that thirty days, however, Derringer filed a memorandum brief on the fee order. The Supreme Court has held that "[i]f a document filed within the time

specified by Rule 4 [of the Federal Rules of Appellate Procedure] gives the notice required by Rule 3, it is effective as a notice of appeal." *Smith v. Barry*, 502 U.S. 244, 248-49 (1992). Rule 3 provides that a notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Fed. R. App. P. 3. We conclude that Derringer's Pro-Se Memorandum, filed January 8, 2003, satisfies the requirements of Rule 3 and therefore serves as the equivalent of a notice of appeal. Consequently, we have jurisdiction over Derringer's appeal of the fee award.

On appeal, Derringer continues his harangue against the Chapels and Judge Fitch. From his pro-se memorandum and briefs, we are able to discern only two arguments about the court's fee award. First, Derringer contends that the district court lacked jurisdiction to enter the November 18 order awarding fees because Derringer's filing of the October 25 notice of appeal on the underlying merits deprived the court of jurisdiction. As the district court explained to Derringer in its order of January 3, however, although the filing of a notice of appeal usually divests a district court of jurisdiction over the issues on appeal, it does not divest the district court of jurisdiction over collateral matters not involved in the appeal, such as attorney fee awards. *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). The district court, therefore, had jurisdiction to adjudicate

the Chapels' motion for attorney fees even after Derringer filed his notice of appeal from the court's merits rulings.

Second, Derringer argues that the Chapels were not entitled to fees because the district court erred in dismissing Derringer's claims against the Chapels. Because we have already determined that the district court did not err in dismissing Derringer's claims against the Chapels, this challenge to the fee award must fail. Derringer makes no other challenge to the fact of the fee award or to the amount of the fees awarded. We therefore affirm the district court's order of January 3, 2003 awarding the Chapels attorney fees in the amount of $6,161.20.

### B. District Court Case No. CIV-02-1580

On December 17, 2002, Susan Nevitt filed suit in federal court against Judge Fitch for alleged violations of her civil rights in connection with the New Mexico state-court proceedings. The district court dismissed the case sua sponte on December 31, 2002, on the ground of absolute judicial immunity. Nevitt appealed and this court affirmed in an unpublished order and judgment issued July 8, 2003. *See Nevitt v. Fitch*, 68 Fed. Appx. 180 (10th Cir. July 8, 2003), *cert. denied*, 124 S. Ct. 1114 (2004).

### C. District Court Case No. CIV-03-0155

On February 3, 2003, Susan Nevitt commenced a second suit in federal court against Judge Fitch. Her complaint included many of the same allegations

she had made against Judge Fitch in district court Case No. CIV-02-1580, as well as allegations of further misconduct post-dating the filing of the earlier complaint. Judge Fitch moved to dismiss the action on grounds of absolute immunity, res judicata, and failure to state a claim.

In a very thorough and careful opinion issued May 19, 2003, the district court disposed of all Nevitt's claims. First, the court concluded that all the claims based on conduct that was or could have been included in Nevitt's 2002 action against Judge Fitch were barred by the doctrine of res judicata. Next, the court considered the claims arising out of actions that occurred after Nevitt filed her complaint in the earlier action. These remaining claims related to an alleged harassing phone call from Judge Fitch in January 2003 and alleged improprieties in the January state-court proceedings and Judge Fitch's ruling of January 28, 2003. The district court concluded that Judge Fitch was absolutely immune from damages on Nevitt's claims relating to the state-court proceedings and Judge Fitch's January 2003 ruling. To the extent Nevitt sought injunctive relief against Judge Fitch on those claims, the court determined the claims were subject to dismissal under the *Rooker-Feldman* doctrine and *Younger* [5] abstention, respectively. Finally, the court concluded that Nevitt's allegations about a threatening phone call from Judge Fitch failed to state a claim for which relief

---

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

-15-

could be granted. In accordance with its opinion, the court entered judgment dismissing all Nevitt's claims with prejudice, except for the ones relating to the phone call, which the court dismissed without prejudice.

Within ten days of the district court's final order, Nevitt filed a motion to reconsider, citing Rule 59(e) and Rule 60(b). In another thorough order issued August 14, 2003, the district court denied Nevitt's motion to reconsider. She then filed a notice of appeal on September 12, which this court docketed as Appeal No. 03-2218.

*Appeal No. 03-2218*

On appeal, Susan Nevitt directs another tirade of invective against Judge Fitch, but does little to address any specific errors in the district court's rulings. We review de novo each of the district court's rulings in its dismissal order of May 19, 2003. *See State Bank v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1082 (10th Cir. 1996) (res judicata); *Scott*, 216 F.3d at 908 (absolute immunity); *Kiowa Indian Tribe of Okla.*, 150 F.3d at 1165 (*Rooker-Feldman*); *Taylor v. Jaquez*, 126 F.3d 1294, 1296 (10th Cir. 1997) (*Younger* abstention); *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (failure to state a claim). We review the court's denial of Nevitt's motion under Rule 59(e) and 60(b) for an abuse of discretion. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (Rule 59(e) motion); *Servants of Paraclete v. Does*,

-16-

204 F.3d 1005, 1009 (10th Cir. 2000) (Rule 60(b) motion). Based on our review, we conclude the district court did not err in dismissing Susan Nevitt's claims against Judge Fitch or in denying her motion under Rule 59(e) and Rule 60(b).

*D. District Court Case No. CIV-03-804*

On July 9, 2003, Derringer filed yet another suit in federal court against the Chapels and Judge Fitch. In that suit, he also named as defendants the law firm that has represented the Chapels in these various proceedings, and the three judges of the New Mexico Court of Appeals who authored the opinion that upheld Judge Fitch's January 28 and February 13, 2003 decisions. Derringer reiterated many of the same allegations from his earlier federal suit in his forty-six-page complaint. He claimed that defendants had violated his civil rights in myriad ways and had engaged in perjury, intimidation, intentional infliction of emotional distress, and solicitation to aid a crime of violence. He sought damages from each of the defendants as well as an order restraining the detrimental effect of any future orders of the defendant judges, preventing the members of the law firm from practicing law in the United States, and requiring each defendant to issue a certificate of compliance. The district court disposed of all Derringer's claims in a series of thorough and careful orders.

Shortly after filing his complaint, Derringer moved to recuse the district court judge on the ground he was biased against pro se litigants in general and

had ruled against Susan Nevitt in an earlier lawsuit. By order entered July 21, 2003, the court denied the motion to recuse.

On July 22, the court sua sponte entered an order dismissing the defendant judges of the New Mexico Court of Appeals, after concluding that Derringer could not possibly prevail on the claims alleged and that amendment would be futile. The court determined that the three judges were absolutely immune from damages and that Derringer's claims for injunctive relief would require the court to invalidate the judges' rulings, which it had no power to do under the *Rooker-Feldman* doctrine. Derringer filed a motion to reconsider, which the court denied by order entered August 14. Derringer appeals these orders.

Early in the case, Derringer moved for sanctions against the members of the defendant law firm and sought their disbarment on the ground that their status as parties-defendant prohibited them from representing the Chapels in this suit. The court entered an order denying the motion on August 14, 2003. On August 15, Derringer filed a second motion for sanctions against the law firm "for attempting to illegally represent" the Chapels in a motion to dismiss the Chapels. R., Doc. 25 at 1. The court denied this second motion for sanctions by order entered August 20, 2003. Derringer appeals both of these orders.

The law firm filed a motion to dismiss the claims against its members and the Chapels on numerous grounds. The court granted the motion by order entered

August 19, 2003. The court noted that many of Derringer's claims could be dismissed on more than one ground. It dismissed all the claims against the Chapels with prejudice on the basis of res judicata. The court concluded that all the claims against the law firm were "thinly disguised attempts to gain federal judicial review of the state court proceedings," which was precluded by the *Rooker-Feldman* doctrine. R., Doc. 36 at 4. Alternatively, the court concluded that the claims against the firm either were barred by collateral estoppel, or lacked a basis for federal jurisdiction, or failed to state a claim. In accordance with this order, the court entered an order denying Derringer's motion for summary judgment against the Chapels on August 20. Derringer now appeals both of these orders.

On August 20, the court also entered an order, sua sponte, relating to the motions practice in the case. The order suspended for the duration of the case the local rule providing that failure to respond to a motion constitutes consent to the motion and it notified the parties that the court would consider all motions to be opposed and would not require a party to consult with other parties before filing a motion. The order further notified the parties that the local rule on page limits in motions and responsive briefs would be strictly enforced. Derringer appeals this order.

Judge Fitch also filed a motion to dismiss the claims against him, arguing the claims were barred by absolute judicial immunity and res judicata. Derringer responded by filing a motion for Rule 11 sanctions against Judge Fitch and the attorney representing him based on the legal arguments advanced in the motion to dismiss. The district court entered an order denying the motion for sanctions on August 20, finding no basis for the imposition of sanctions against Judge Fitch or his attorney. Derringer appeals this order.

On September 4, the court entered an order granting Judge Fitch's motion to dismiss. The court concluded that all the claims against Judge Fitch based on acts occurring before August 7, 2002–the date on which Derringer filed his suit against Judge Fitch in Case No. CIV-02-0974–were barred by res judicata. The court also concluded that the claims against Judge Fitch arising from his judicial acts after August 7, 2002, were barred by absolute judicial immunity and the *Rooker-Feldman* doctrine. Finally, the court concluded that the remaining claims–that Judge Fitch made a harassing phone call to Susan Nevitt in January 2003 and entered into a plot to kill Derringer–failed to state a claim. Derringer appeals this order.

On September 4, the court entered judgment on a separate document disposing of all Derringer's claims in accordance with its earlier orders. On September 8, the court also entered an order imposing filing restrictions on

Derringer. The court had previously issued a detailed show-cause order on August 11 outlining its intent to impose filing restrictions and giving Derringer an opportunity to respond within twenty days. [6] In its order of September 9, the court found nothing in Derringer's response to dissuade it from entering the proposed restrictions. Accordingly, it entered an injunction prohibiting Derringer from instituting new lawsuits in federal court in New Mexico unless he complies with the procedures specified in the order. Derringer appeals this order.

*1. Appeal No. 03-2181*

On August 13, before the district court had entered final judgment, Derringer filed a notice of appeal from the court's order dismissing the claims against the judges of the New Mexico Court of Appeals and from the court's show-cause order concerning proposed filing restrictions. This court docketed the appeal as No. 03-2181. Because the orders Derringer had appealed from were not final and the district court had not certified them for immediate appeal under Fed. R. Civ. P. 54(b), we issued an order on August 20 tolling the briefing

---

[6]  In its show-cause order, the court listed all the federal lawsuits Derringer or his wife Susan have filed arising out of the state-court proceedings. In addition to the four district-court actions discussed in this order and judgment, there are five more that have been filed by Derringer against various parties. The court found that Derringer's "numerous filings present as different versions of the same unwieldy complaint," and concluded that Derringer's "lobbing of frivolous and vexatious lawsuits against these Defendants is likely to continue without this Court's intervention." R., Doc. 14 at 2.

-21-

schedule and giving Derringer thirty days to file a certified copy of a district court order granting Rule 54(b) certification or adjudicating the remaining claims. The district court adjudicated all the remaining claims and Derringer filed a second notice of appeal on September 12, which was docketed as Appeal No. 03-2215. That notice of appeal included the orders previously appealed in No. 03-2181, and we companioned the two appeals for disposition.

*2. Appeal No. 03-2215*

In his notice of appeal filed September 12, Derringer specifically identified all the orders of the district court discussed above, with the exception of the order denying Derringer's motion to recuse. In his opening brief, Derringer continues his tirade against the Chapels and Judge Fitch, with additional invective directed at the Chapels' law firm, the New Mexico Court of Appeals, and especially the federal district court judge who presided over this case. Once again, Derringer makes little argument that is actually directed at any specific errors of the district court.

As we have already stated, we review the district court's rulings on absolute immunity, res judicata, *Rooker-Feldman*, and failure to state a claim de novo. Our review shows no error in those rulings of the district court. We review the district court's denial of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Again, we see no

-22-

error in the court's orders denying Derringer's motions for sanctions. As for the court's sua sponte order on the parties' motions practice, that order was clearly within the court's inherent power to regulate its docket, *see Stafford v. United States*, 208 F.3d 1177, 1179 (10th Cir. 2000) (noting court's "inherent power to regulate federal dockets").

Finally, as to the court's order imposing filing restrictions on Derringer, we note that "[t]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) (quotation omitted). The district court required that Derringer meet the following conditions before filing a new lawsuit in federal court in the District of New Mexico: 1) he must be represented by licensed counsel, who must certify that the complaint complies with Rule 8 and Rule 11; *or* 2) he may proceed pro se if he first a) demonstrates to the court that the action is filed in good faith and is not malicious or without arguable merit; b) certifies that the complaint complies with Rule 11; c) includes a list of previous actions filed in state and federal court with a list of the parties involved; d) provides the court with a list of all outstanding filing restrictions in either state or federal court; and e) includes an affidavit that lists the claims to be pursued and the legal basis for them and discloses whether the same or similar claims have been

presented in other actions and, if so, discloses the status of those actions. The affidavit must also certify that the legal arguments being raised are not frivolous or made in bad faith and are warranted by existing law or a good-faith argument for the extension, modification, or reversal of that law. R., Doc. 46 at 1-3.

The court's order also set out the procedures for enforcing these restrictions and provided that they would go into effect on September 8, 2003, but would not apply to any pending lawsuit. Our review shows that the restrictions imposed by the district court "are clearly the type of carefully tailored restrictions contemplated by the various courts that have addressed the question of restraints on abusive litigants." *Tripati*, 878 F.2d at 353. In addition, the court gave Derringer adequate notice of its intent to impose the restrictions and an adequate opportunity to respond. We therefore conclude that the filing restrictions imposed were appropriate. "[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Id*. (citations omitted).

### III. Warning of Possible Sanctions

As we have noted above, the filings before this court by both Susan Nevitt and David Derringer have been filled with factually unsupported, outrageous, scandalous, and vituperative accusations against the parties, including judges of the New Mexico courts, and against the federal district court judge who presided

over two of these cases. In addition, the briefs by Nevitt and Derringer have made no attempt to comply with the requirements of Fed. R. App. P. 28 or 10th Cir. R. 28. Derringer has also papered this court with motions, many of which seek relief that is clearly beyond this court's power to grant. This court will not countenance such conduct. Accordingly, Derringer and Nevitt are hereby warned that if they continue this type of misconduct in these or future appeals before this court, they may be subject to sanctions under this court's inherent powers to control its docket and under 10th Cir. R. 46.5 and 46.6. These sanctions could include, among other things, monetary sanctions, dismissal of their appeal(s), and future filing restrictions.

*IV. Conclusion*

For the reasons set forth above and in the district courts' orders in these cases, we hereby AFFIRM the judgments of the district court in Case No. CIV-02-947 (Appeal Nos. 02-2315 & 02-2329); we AFFIRM the judgment of the district court in Case No. CIV-03-155 (Appeal No. 03-2218); and we AFFIRM the judgment of the district court in Case No. CIV-03-804 (Appeal Nos. 03-2181 & 03-2215). We GRANT permission for Derringer to file his reply brief addressing the Chapels' response brief in Appeal No. 02-2329, and his reply brief addressing the New Mexico judges' response brief in Appeal Nos. 03-2181 & 03-2215. We also GRANT the Chapels' motions in Appeal No. 02-2315 and

-25-

Appeal No. 02-2329 to take judicial notice of decisions of the New Mexico Court of Appeals. All other outstanding motions are DENIED as moot.

Entered for the Court

Bobby R. Baldock
Circuit Judge