United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2005

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04–60407
Summary Calendar

———————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

VERSUS

SUPERIOR PROTECTION, INC.,

Respondent.

———————————

Petition for Enforcement of an Order of
the National Labor Relations Board
m 16–CA–23210

———————————

Before DAVIS, SMITH, and
   DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The National Labor Relations Board (the
"Board") seeks enforcement of its order com-
pelling respondent Superior Protection, Inc.
("Superior"), to bargain with United Govern-
ment Secuity Officers of America, Local 229.

Superior contends that enforcement should be
denied on the sole ground that the collective
bargaining unit certified by the Board improp-
erly accreted (i.e., added) employees hired
after the representation election into the certi-
fied bargaining unit without the benefit of an
election, thus improperly assigning to the
accreted employees the certified unit's choice
of bargaining representative.

We disagree. The Board's bargaining unit determination did not automatically effect an accretion of newly-hired employees, and the union is not seeking to accrete those employees as a consequence of the unit determination. Accordingly, we grant the Board's application for enforcement.

I.

Superior provides security services to federal agencies pursuant to contracts with the General Services Administration ("GSA"). One of these contracts obligates Superior to provide security officers to certain federal facilities in three Texas countiesSSHarris, Montgomery, and Galveston.

In August 2001, the union filed a representation petition with the Board seeking certification as the collective-bargaining representative of security officers employed by Superior and "assigned to work in federally owned and leased property in Houston, Texas, including the immediate surrounding areas, under the Federal Government contract for security services through the Employer (contractor)." Superior opposed the petition, contending that, although all security employees assigned to work at GSA facilities in Harris County[1] should be included, those in adjacent counties (Montgomery and Galveston) should be excluded from the certified unit.

After a hearing, the Board's Regional Director issued a decision finding that all security officers "assigned to work at GSA contract facilities in Harris, Montgomery, and Galveston counties" constituted the appropriate collective bargaining unit.[2] The Regional

[1] The City of Houston is located primarily in Harris County.

[2] The Regional Director's unit determination (continued...)

Director directed that an election be held among the employees in the unit. Superior requested Board review of the decision to include security officers from Montgomery and Galveston Counties, but the Board denied the request, finding that Superior had failed to raise any substantial issue warranting review.

A mail ballot election among unit employees was conducted by the Regional Director in October 2001. The secret ballots asked unit employees to vote up or down on whether they wished to be represented for purposes of collective bargaining by the union. Of the 30 unit employees then believed eligible to vote, 20 cast ballots, of which 9 voted in favor of representation by the union; 9 voted against; and 2 ballots were challenged and not counted.

Superior and the union stipulated that one of the challenged ballots had indeed been cast by an ineligible voter. Thus, the single remaining challenged ballot, which had been cast by unit employee Kevin Trotter, was determinative. Superior maintained that Trotter was

[2](...continued)
provides:

> The following employees of the Employer constitute a unit appropriate for the purpose of collective bargaining within the meaning of Section 9(b) of the Act:
>
> Included: All permanent, full-time and regular part-time security officers assigned to work at GSA contract facilities in Harris, Montgomery and Galveston counties.
>
> Excluded: All office clerical employees, employees on temporary assignment, professional employees, managers and supervisors as defined by the Act.

ineligible because he had been discharged before the election; the union countered by alleging that Superior had committed unfair labor practices by discharging Trotter for having testified at the representation hearing and for having engaged in union activity.

Superior and the union litigated the validity of Trotter's challenged ballot and the related unfair labor practices complaint in a consolidated proceeding before an administrative law judge ("ALJ"). In August 2002, the ALJ sustained the union's unfair labor practices complaint, finding Superior's proffered reasons for discharging Trotter to be "pure subterfuge, masking the true motive of retaliation for Trotter's testimony at the Board proceeding and his manifest support" for the union. Thereafter, in a published decision issued in July 2003, the Board adopted the ALJ's unfair labor practices finding and directed the Regional Director to open and count Trotter's ballot, issue a revised tally of ballots, and provide the appropriate certification. *See Superior Protection Inc.*, 339 N.L.R.B. 118 (2003).

Trotter's vote in favor of representation was added to a revised tally issued by the Regional Director, yielding a 10 to 9 vote in favor of union representation. On August 25, 2003, the Regional Director certified the union as the exclusive collective-bargaining representative of employees in the previously certified bargaining unit: "[a]ll permanent, full-time and regular part-time security officers assigned to work at GSA contract facilities in Harris, Montgomery and Galveston counties."

The union sought to bargain with Superior and requested information from Superior regarding unit employees. Superior refused to bargain and refused the union's request to provide information about unit employees.

In response, the union filed an unfair labor practices complaint with the Board charging Superior with refusing to bargain and failing to furnish requested information in contravention of § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (5). The Board's General Counsel issued a complaint, and Superior filed an answer in which it admitted its refusal to bargain and to furnish requested information but challenged the union's certification as bargaining representative on grounds that (1) the certified bargaining unit inappropriately included employees in Montgomery and Galveston counties; and (2) Trotter was not an eligible voter, and thus the union had not received a majority of valid votes.

In January 2004, the Board issued a notice to show cause why summary judgment should not be granted in favor of the General Counsel. Superior responded by restating its initial challengesSSthe certified bargaining unit was inappropriate, and Trotter was not eligible to vote in the electionSSand by advancing a challenge to the Regional Director's decision to direct a mail ballot election and to the manner in which the election was conducted.

In addition, Superior averred for the first time that, even if the certified unit was appropriate as an original matter, it was no longer appropriate because (after the Regional Director's initial unit determination) Superior had entered into a second contract with GSA to provide security officers at eight additional federal facilities within the geographic scope of the certified unit. According to Superior, the employees at these additional federal facilities within the geographic scope of the certified unit would effectively be accreted to the existing unit without an election, in violation of Board policy.

3

In August 2004, the Board granted summary judgment in favor of the General Counsel, holding that Superior's admitted refusal to bargain and furnish requested information constituted unfair labor practices in violation of § 8(a)(1) and (5). *See Superior Protection Inc.*, 341 N.L.R.B. 35 (2004). In so doing, the Board refused to reexamine Superior's arguments regarding the propriety of the three-county certified bargaining unit and Trotter's eligibility, reasoning that they had been fully litigated and addressed in the pre-election proceeding and the consolidated ballot challenge/unfair labor practices proceeding. The Board similarly rejected on procedural grounds Superior's challenge to the Regional Director's decision to conduct a mail ballot election and to the manner in which the election was conducted.

As for Superior's claim that the certified unit was no longer appropriate because the employees at the eight additional GSA facilities it now services within the geographic scope of the certified unit would necessarily (and improperly) be accreted to the smaller group of employees in the certified unit, the Board rejected this claim on three grounds. First, the Board noted that there was no indication that the Union was seeking to accrete these new employees to the existing unit; indeed, the Board pointed to a separate representation petition filed by the Union in January 2003 seeking to represent the new employees at the additional GSA facilities as a separate and distinct bargaining unit.[3]

Second, the Board reasoned that the new employees would not automatically be accreted to the existing unit as a consequence of the Board's unit determination, especially in light of Superior's contention that the new employees outnumber the existing unit employees and of the Union's apparent position (gauged from the separate representation petition filed by the Union) that the new employees constitute a separate appropriate bargaining unit. Third, the Board observed that Superior was not claiming that the two groups of employees (old and new) had merged in a manner that had obscured their separate identity. Consequently, the Board entered an order compelling Superior to bargain with and furnish information to the Union.

Superior filed a motion for reconsideration alleging that a "cursory inquiry" conducted by the company after the Board's decision revealed that the new employees at the additional GSA facilities had in fact merged or consolidated with the existing unit employees. The Board denied the motion, finding that Superior had not carried its burden of demonstrating that it had been diligent in discovering all available evidence and that the evidence was in fact previously unavailable. In May 2004, the Board filed the instant application for enforcement of its order compelling Superior to bargain with and furnish information to the Union.

II.

Having abandoned a majority of the arguments advanced to the Board,[4] Superior now

---

[3] This petition has been docketed and is referred to by the Board in its summary judgment decision as Case 16–RC–10480. The Board's summary judgment opinion reveals that the Regional Director took no action on this separate representation petition during the pendency of the instant representation petition, instead holding it in abeyance (continued...)

[3] (...continued)
pending resolution of this matter.

[4] Because Superior's brief deals only with the alleged accretion, the company has abandoned its (continued...)

attacks the Board's order on a single legal ground: It contends that, because the certified bargaining unit includes within its scope employees hired after the representation election to work at additional federal facilities, the Board improperly accreted these new employees to the certified unit without affording them an opportunity to manifest their will in a union election. Because the union has not sought to accrete these employees, nor have the employees been automatically accreted to the existing unit as a consequence of the Board's unit determination, this contention is unavailing.

## A.

We review questions of law decided by the Board *de novo*. "[I]f the Board's construction of the statute is 'reasonably defensible,' its orders are to be enforced.'" *NLRB v. Motorola, Inc.*, 991 F.2d 278, 282 (5th Cir. 1993) (quoting *Standard Fittings Co. v. NLRB*, 845 F.2d 1311, 1314 (5th Cir. 1988)).

## B.

An accretion occurs when new employees, or present employees in new jobs, perceived to share a sufficient community of interest with existing unit employees, are added to an existing bargaining unit without being afforded an opportunity to vote in a union election.[5] The

accretion doctrine thus assigns to the accreted employees the existing unit's choice of bargaining representative. *E.g.*, *Baltimore Sun Co. v. NLRB*, 257 F.3d 419, 427 (4th Cir. 2001). "Essentially, the doctrine is designed to preserve industrial stability by allowing adjustments in bargaining units to conform to new industrial conditions without requiring an adversary election every time new jobs are created or other alterations in industrial routine are made." *NLRB v. Stevens Ford, Inc.*, 773 F.2d 468, 473 (2d Cir. 1985).

Notwithstanding any benefits to industrial stability, because accreted employees are absorbed into an existing collective bargaining unit without an election and are governed by the preexisting unit's choice of bargaining representative, the accretion doctrine sits in substantial tension with the guarantee of employee self-determination reflected in § 7 of the NLRA, which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all

[4](...continued)
arguments related to the propriety of the original certified unit; Trotter's eligibility to vote in the union-shop election; the Regional Director's decision to direct a mail ballot election; and its challenge to the manner in which the mail ballot election was conducted.

[5] The most common circumstances giving rise to a claim of accretion involve an employer with a preexisting bargaining unit that acquires an additional facility where the new employees' interests
(continued...)

[5](...continued)
align with existing unit employees, and the union attempts to add the new employees to the existing bargaining unit without an election. *See generally* Michael J. Frank, *Accretion Elections: Making Employee Choice Paramount*, 5 U. PA. J. LAB. & EMP. L. 101, 107–08 (2002); 1 THE DEVELOPING LABOR LAW 404 (Patrick Hardin ed., 3d ed. 1992) ("An employer's acquisition or construction of an additional operation or facility after the execution of the contract frequently gives rise to a claim of accretion.").

such activities . . . .

29 U.S.C. § 157.[6] Thus, although § 7 provides employees with the right to bargain collectively through "representatives of their own choosing" and "the right to refrain from" collective bargaining,[7] the accretion doctrine operates to contravene both of these rightsSSi.e., accreted employees are forced to accept both union representation itself and representation by a particular union without benefit of an election.

Recognizing this conflict, the Board's jurisprudence "has historically favored employee elections, reserving accretion orders for those rare cases in which it could conclude with great certainty, based on the circumstances, that the employees' rights of self-determination would not be thwarted." *Baltimore Sun*, 257 F.3d at 427.[8] Accordingly, the Board will accrete employees to an existing unit without an election "only when the additional employees have little or no separate group identity and thus cannot be considered to be a separate appropriate unit and when the additional employees share an overwhelming community of interest with the preexisting unit to which they are accreted." *Safeway Stores, Inc.*, 256 N.L.R.B. 918 (1981) (footnotes omitted).[9]

---

[6] *See, e.g.*, *Pix Mfg. Co.*, 181 N.L.R.B. 88, 90 (1970) ("[W]hen a claim of accretion is made to an existing unit, a favorable determination forecloses a vote and restricts the employees in the exercise of their basic right to select their bargaining representative. That right is the predominant consideration under Section 7 of the Act and is to be restricted only under 'compelling conditions.'"); *Baltimore Sun*, 257 F.3d at 429 (noting that "misuse of accretion poses a significant threat to the self-determination rights of employees guaranteed by § 7 of the NLRA"); *NLRB v. Ill.-Am. Water Co.*, 933 F.2d 1368, 1377 (7th Cir. 1991) ("[C]ourts exhibit heightened concern when applying the accretion doctrine because the accreted employees receive union representation without voicing their own choices through an election." (citing *Consolidated Papers, Inc. v. NLRB*, 670 F.2d 754, 757 n.4 (7th Cir. 1982)); *id.* ("To a certain extent, an accretion interferes with the employees' 'freedom to choose their own bargaining agents.'") (citing *Consolidated Papers*, 670 F.2d at 757 n.4).

[7] *See Baltimore Sun*, 257 F.3d at 426 ("This core provision guards with equal jealousy employees' selection of the union of their choosing and their decision not to be represented at all.") (citing *Newport News Shipbuilding & Dry Dock Co.*, 233 N.L.R.B. 1443, 1452 (1977)).

[8] *See also Pan Am. Grain Co.*, 317 N.L.R.B. 442, 447 (1995) ("'In furtherance of the statutory duty to protect employees' right to select their bargaining representative, the Board follows a restrictive policy in finding accretion.'") (quoting *United Parcel Serv.*, 303 N.L.R.B. 326, 327 (1991)); *Boire v. Int'l Bhd. of Teamsters*, 479 F.2d 778, 795 (5th Cir. 1973) ("[T]he Board has traditionally been reluctant to find an accretion, even where the resulting unit would be appropriate, in those cases where a smaller unit, consisting solely of the accreted unit, would also be appropriate and the § 7 rights of the accreted employees would be better served by denying the accretion."); *Stevens Ford*, 773 F.2d at 473 ("[B]ecause the accretion doctrine generally imposes a bargaining representative on employees without an election, it should be employed restrictively, with close cases being 'resolve[d] . . . through the election process.'") (quoting *Westinghouse Elec. Corp. v. NLRB*, 440 F.2d 7, 11 (2d Cir. 1971)).

[9] *See also Baltimore Sun*, 257 F.3d at 428 ("When the two-part test of *Safeway Stores* is faithfully applied, accretion of employees to a bargaining unit will occur only in those extraordinary cases in which the Board can be reasonably certain (continued...)

6

And, in furtherance of the NLRA's policy of employee self-determination, doubts as to whether new employees share the requisite overwhelming community of interest with the existing unit are to be resolved through the election process.[10] Moreover, the Board will not permit an accretion if the size of the group to be accreted overshadows the number of employees in the existing unit.[11]

### C.

There is no basis in the record warranting the conclusion that the union is attempting to accrete the new employees at the additional facilities to the certified unit. To the contrary, as the Board observed, while the representa-tion petition was pending before the Board, the union filed a separate representation petition seeking to be certified as the exclusive collective bargaining representative of the new employees at the additional facilities as a *separate* and *distinct* bargaining unit. In fact, the union's representation petition expressly classified the scope of the proposed unit as including "[a]ll sites *other* than locations in" the instant representation proceeding. (Emphasis added.)

Because the union has not sought to accrete the new employees into the existing unit, Superior's reliance on *Renaissance Ctr. P'ship*, 239 N.L.R.B. 1247 (1979), and evidence of an alleged merger between the two groups of employees is particularly misplaced. In *Renaissance*, the Board dismissed a union's clarification petition that sought to accrete a numerically larger group of new employees to an existing bargaining unit, even though the evidence revealed that the two groups of employees merged and had become indistinguishable. Here, however, the union is not seeking to clarify the confines of the existing unit by accreting new employees in light of evidence of employee merger or consolidation, but instead is seeking to treat the new employees as a separate bargaining unit.

Moreover, we reject Superior's contention that the new employees at the additional GSA facilities will automatically be accreted to the existing unit as a consequence of the unit certified by the Board. Superior is no doubt correct that the certified unit includes on its face all security employees staffing GSA facilities in the three-county area.[12] But,

---

[9](...continued) that no election is required and that the accreted employees share such similar interests with employees in the bargaining unit that they would choose it."). This test is substantially more stringent than the traditional community of interest test applied in "the Board's more ordinary decision to certify initially a particular group of employees as an appropriate bargaining unit." *NLRB v. DMR Corp.*, 795 F.2d 472, 475 (5th Cir. 1986). In that context, "[t]he unit chosen need not be the most appropriate, but only one which is appropriate under the circumstances." *Ochsner Clinic v. NLRB*, 474 F.2d 206, 209 (5th Cir. 1973). In the accretion context, however, "[a] group of employees is properly accreted to an existing bargaining unit when they have such a close community of interests with the existing unit that they have no true identity distinct from it." *NLRB v. St. Regis Paper Co.*, 674 F.2d 104, 107-08 (1st Cir. 1982).

[10] *See, e.g.*, *Baltimore Sun*, 257 F.3d at 429; *Westinghouse*, 440 F.2d at 11; *Martin Marietta*, 270 N.L.R.B. 821, 822 (1984).

[11] *See, e.g.*, *Gould, Inc.*, 263 N.L.R.B. 442, 445 (1982).

[12] As we have indicated, the certified bargaining unit includes "[a]ll permanent, full-time and regu-
(continued...)

contrary to Superior's assertions, this does not mean that the new employees at the additional facilities have been, or necessarily will be, accreted to the certified unit: "[T]he Board . . . does not automatically accrete employees at a new [facility] solely because the unit description includes all the employer's [facilities], present and future, in a geographic area . . . ." *Coca-Cola Bottling Co.*, 310 N.L.R.B. 844, 844 (1993). Indeed, as the substantive law regarding accretion indicates, a finding of accretion is far from automatic: The Board will permit an accretion only in the small class of cases warranting a finding that the new employees cannot be considered a separate appropriate unit and that they share an overwhelming community of interest with the preexisting unit.

To be sure, this case does present some circumstances that would militate in favor of a finding of accretion by the BoardSSe.g., the fact the new employees were acquired after the unit determination but likely would have been included in the certified unit if they had been present earlier.[13] At the same time, however,

Superior devotes considerable ink to a proposition that appears to present a nearly insurmountable obstacle to a board finding of accretionSSnamely, that the new security employees (of which there are 42) outnumber the existing unit employees (of which there are 29).[14] In fact, in rejecting Superior's accretion argument, the Board recognized that "accretion would be inappropriate if the employees at the additional facilities numerically overshadow the employees that existed at the time of the election." Thus, should the union alter its current course and eventually seek to accrete the new employees to the existing unit, Superior can raise this numerical objection among others in that proceeding.

ENFORCEMENT GRANTED.

---

[12](...continued) lar part-time security officers assigned to work at GSA contract facilities in Harris, Montgomery and Galveston counties."

[13] In this regard, consider, for example, the Board's explanation in *Pan American Grain* of when a finding of accretion would be justified:

One aspect of this restrictive policy has been to permit accretion only in certain situations where new groups of employees have come into existence after a union's recognition or certification or during the term of a collective bargaining agreement. If the new employees have such common interests with members of an existing (continued...)

---

[13](...continued) bargaining unit the new employees would, if present earlier, have been included in the unit or covered by the current contract, then the Board will permit accretion in furtherance of the statutory objective of promoting labor relations stability.

*Pan Am. Grain*, 317 N.L.R.B. at 447 (citing *Gould*, 263 N.L.R.B. at 445).

[14] *See, e.g.*, *Carr-Gottstein Foods Co.*, 307 N.L.R.B. 1318, 1318 (1992) ("When the unrepresented group sought to be accreted numerically overshadows the existing unit, the board will not accrete the larger number of unrepresented employees without giving them a chance to express their representational desires.").