**F I L E D**

PUBLISH

**September 1, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LISA BURKE and MICHAEL
CARPER, individually and on behalf
of all others similarly situated,

        Plaintiffs-Appellants,

    v.

UTAH TRANSIT AUTHORITY and
LOCAL 382 THE AMALGAMATED
TRANSIT UNION,

        Defendants-Appellees,


JOHN INGLISH, individually, and
THE UNITED STATES
DEPARTMENT OF LABOR,

        Defendants.

_____

LISA BURKE and MICHAEL
CARPER, individually and on behalf
of all others similarly situated,

        Plaintiffs-Appellants,

    v.

No. 05-4079

No. 05-4222

UTAH TRANSIT AUTHORITY,
JOHN INGLISH, individually,
LOCAL 382 THE AMALGAMATED
TRANSIT UNION, and THE UNITED
STATES DEPARTMENT OF LABOR

Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 04-CV-985-PGC)**

---

Daniel G. Moquin, Tuba City, Arizona (Mel S. Martin and Edward T. Wells, Murray, Utah, with him on the briefs) for Appellants.

Scott A. Hagen (James S. Jardine and Michael E. Blue with him on the briefs), Ray Quinney & Nebeker, P.C., Salt Lake City, Utah, for Appellees Utah Transit Authority and John Inglish; Joseph E. Hatch, Murray, Utah, for Appellee Local 382 of The Amalgamated Transit Union; Robert D. Kamenshine, Appellate Staff Attorney, (William Kanter, Appellate Staff Attorney, Robert G. McCampbell, United States Attorney, and Peter D. Keisler, Assistant Attorney General, with him on the brief), United States Department of Justice, Washington, D.C., for Appellee United States Department of Labor.

---

Before **TYMKOVICH**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **EAGAN**, District Judge.[*]

---

**TYMKOVICH**, Circuit Judge.

---

[*] Honorable Claire V. Eagan, Chief District Court Judge, Northern District of Oklahoma.

Recognizing the need for more public transportation options in Utah's capital, the Utah Transit Authority (UTA) formulated a plan to add light rail service in Salt Lake City in the mid-1990s. Salt Lake City has long offered public transportation, beginning in 1904 with streetcar services and eventually changing exclusively to bus services. Since its inception, Local 382 of the Amalgamated Transit Union has continuously represented the employees of Utah's public transit system. Therefore, it was no surprise that when UTA established light rail service, Local 382 became the bargaining representative for those employees.

Despite Local 382's extensive history serving as the bargaining representative for Utah's public transit employees, a handful of light rail employees sought different representation. The question in this appeal is whether these employees are entitled under either federal law—the Urban Mass Transportation Act of 1964 (UMTA), or state law—the Public Transit District Act, to contest their inclusion in a bargaining unit with UTA's bus employees. The light rail employees claim that UTA's failure to afford them a separate bargaining representative violated the terms of both of these Acts.

The employees brought suit against UTA, Local 382, and the United States Department of Labor (DOL). The district court denied the employees' request for a preliminary injunction, granted summary judgment for UTA, and dismissed the suit against DOL. This appeal followed.

Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding no error, we AFFIRM.

## I. Background

UTA, a political subdivision of the state of Utah, provides public transportation services to Utah commuters. The bus system, operating throughout the state and comprising the vast majority of the services, has been in operation since the 1940s. In 1995, UTA decided to supplement this bus service by adding a light rail service in Salt Lake City. This service was dubbed TRAX.

At that time, UTA employees were covered by a collective bargaining agreement negotiated by Local 382, the bargaining representative for UTA and its predecessors since 1904. To ensure union representation for TRAX employees, UTA initiated negotiations with Local 382 to modify the collective bargaining agreement. These negotiations culminated in a new collective bargaining agreement that a majority of UTA employees ratified in 1999.

The new agreement maintained Local 382 as the bargaining representative for both bus and TRAX employees. It also established a seniority system for UTA employees who transferred to TRAX positions, thereby allowing a newly transferred but senior bus employee to bump a current TRAX employee to a less-desirable shift. Appellants Lisa Burke and Michael Carper transferred to TRAX as a result of this original agreement. In fact, the vast majority of TRAX's 150

employees are transferees from the 1000-member bus division.

This combined collective bargaining agreement remained in effect until 2003 when UTA and Local 382 entered into negotiations for a new agreement. During the course of these negotiations, appellants objected on the grounds that the proposed agreement maintained Local 382 as its exclusive bargaining agent and continued the seniority program. UTA denied their petition and a majority of UTA employees ratified the new agreement, which included a provision establishing a task force to study the seniority issue.

The task force recommended no changes to the seniority system. Consequently, appellants complained to DOL that Local 382 could not adequately represent the interests of TRAX employees and, therefore, UTA was violating their collective bargaining rights. They asked DOL to investigate alleged violations of § 13(c) of UMTA, now codified at 49 U.S.C. § 5333(b), based on UTA's failure to afford TRAX employees a separate bargaining unit from the bus employees. DOL responded that the existing consolidated bargaining arrangement fully satisfied the requirements of § 13(c) and rejected their complaint.

Following DOL's rejection, appellants filed suit in the District of Utah against UTA, Local 382, and DOL. The action alleged UTA violated (1) UMTA,

(2) Utah Code § 17A-2-1031, and (3) the First Amendment.  It further claimed

that Local 382 (4) breached its fiduciary duty to TRAX employees, and DOL

(5) violated UMTA.  As part of their lawsuit, appellants filed a motion for a

preliminary injunction seeking to (1) bar UTA from transferring bus employees to

TRAX, (2) bar UTA from allowing transferred employees to retain their seniority,

and (3) require UTA to post information regarding their efforts to organize a new

bargaining unit at the work site.

The district court denied the motion for a preliminary injunction.

Appellants then filed a second motion for a preliminary injunction alleging the

district court applied the wrong legal standards in its original denial.  Again, their

motion was denied.  The district court subsequently granted DOL's motion to

dismiss, granted summary judgment in favor of UTA, and dismissed the action

against Local 382.  Appellants separately appealed the denial of the preliminary

injunction orders as well as the dismissal of the claim against DOL and the grant

of summary judgment.  These appeals are consolidated before us.

## II.  Analysis

Appellants assert numerous errors on appeal, broadly arguing that UTA's

failure to afford TRAX employees a separate bargaining unit with separate

representation is a violation of UMTA and Utah Code § 17A-2-1031.  Their

primary argument is that the district court erred in granting summary judgment for

UTA because it misapplied state and federal law. Additionally, they claim the court failed to properly assess DOL's duty under UMTA and failed to consider the entire administrative record before dismissing their action against DOL. Finally, appellants claim that the district court should not have denied either their motion for discovery or their motion to amend the complaint.[1]

## A. *Existence of Appropriate Bargaining Unit*

Appellants' primary argument is that the district court erred in concluding that TRAX employees were not entitled to a separate bargaining representative under UMTA and Utah Code § 17A-2-1301. The district court, applying federal labor law precedents, concluded that the light rail employees failed to show they should be separated from the existing bargaining unit.

We review a district court's grant of summary judgment de novo, applying the same legal standards used below. *Schutz v. Thorne*, 415 F.3d 1128, 1131 (10th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we "view the evidence and draw reasonable

---

[1] Appellants also appeal the district court's denial of their preliminary injunction motions. Because of our ultimate disposition in this case, this appeal is moot.

inferences therefrom in the light most favorable to the nonmoving party." *Schutz*, 415 F.3d at 1131 (quotation omitted). At the summary judgment stage, a complainant cannot "rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Utah v. Babbitt*, 137 F.3d 1193, 1204–05 (10th Cir. 1998) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

1. UMTA

We begin by addressing whether appellants state a claim under UMTA. The district court noted that UMTA merely requires the preservation of collective bargaining rights for state transit employees. Finding that plaintiffs raised no factual issues in this regard, the court rejected the legal basis for their claim.

UMTA sets forth minimal standards that a state transit authority must satisfy before it may receive federal funding. Section 13(c) of the statute states:

> (1) As a condition of financial assistance . . ., the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable. . . .
> (2) Arrangements . . . shall include provisions that may be necessary for—
>> (A) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise;
>> (B) the continuation of collective bargaining rights;
>> (C) the protection of individual employees against a worsening of their positions related to employment . . . .

49 U.S.C. § 5333(b).

Under its plain terms, the Act governs the financial relationship between the Department of Labor and state transit authorities. Section 13(c) provides "an important tool to protect the collective-bargaining rights of transit workers, by ensuring that state law preserve[s] their rights before federal aid [can] be used to convert private companies into public entities." *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 27–28 (1982). The Supreme Court also has noted that the "legislative history [of UMTA] indicates that Congress intended [collective bargaining agreements] to be governed by state law applied in state courts." *Id.* at 29; *see also Amalgamated Transit Union Int'l v. Donovan*, 767 F.2d 939, 947 (D.C. Cir. 1985) ("Section 13(c) does not prescribe mandatory labor standards for the states, but rather dictates the terms of federal mass transit assistance. States are free to forego such assistance and thus to adopt any collective bargaining scheme they desire.").

Accordingly, § 13 does not create a federal cause of action against state transit recipients. *Jackson Transit Auth.*, 457 U.S. at 29; *City of Beloit v. Local 643, AFSCME*, 248 F.3d 650, 653 (7th Cir. 2001). Appellants, therefore, do not state a claim under UMTA. Appellants' claim must arise, if at all, under state law.

2. Utah Code § 17A-2-1031

Appellants claim UTA violated the Utah Public Transit District Act, in particular § 17A-2-1031 of the Utah Code. This provision was enacted in 1969 to comply with the requirements of federal law contained in UMTA and thereby ensure federal funding. *See* Utah Code Ann. § 17A-2-1030 (requiring that "[t]he rights, benefits and other employee protective conditions and remedies of [§ 13(c) of UMTA] . . . apply to the establishment and operation by the district of any public transit service or system and to any lease, contract, or other arrangement to operate such system or services.").

The statute provides that a local transit authority shall recognize a labor organization that represents the majority of employees:

> Employees of any public transit system established and operated by the district shall have the right to self-organization, to form, join, or assist labor organizations and to bargain collectively through representatives of their own choosing provided, however, that such employees and labor organizations shall not have the right to join in any strike against such public transit system. *The district shall recognize and bargain exclusively with any labor organization representing a majority of its employees in an appropriate unit* with respect to wages, salaries, hours, working conditions, and welfare and pension and retirement provisions, and, upon reaching agreement with such labor organization, to enter into and execute a written contract incorporating therein the agreements so reached.

*Id.* § 17A-2-1031 (emphasis added).

Appellants argue that under § 17A-2-1031, a bargaining unit composed of both bus and TRAX employees is not an "appropriate unit," primarily because TRAX employees were denied their right to select a bargaining representative.

This right, they assert, could neither be waived nor resolved by contract. Thus, they claim the district court erred in concluding that the existing unit could reasonably serve the interests of the light rail employees.

### a. *Appropriateness of Bargaining Unit*

Section 17A-2-1031 requires UTA to "recognize and bargain exclusively with *any labor organization representing a majority of its employees in an appropriate unit* with respect to wages, salaries, hours, working conditions, and welfare and pension and retirement provisions." (emphasis added). Based on this plain language, UTA need only bargain with an appropriate unit, not the most appropriate unit. Because this provision was enacted to ensure federal funding under UMTA, we read appropriate to mean any unit sufficient to comply with UMTA.

The bargaining unit here—composed of both TRAX and bus employees—is appropriate. Preliminarily, UTA has continued to receive federal funding under § 13(c) and, as we later discuss, we find no error on the part of DOL in certifying the unit and granting aid. But even in the absence of DOL certification, we find the bargaining unit appropriate, for a number of reasons.

First, the collective bargaining history of UTA evidences the appropriateness of the consolidated unit. Local 382 has been the bargaining representative for every mass transit service in Utah since 1904, including all

services provided by UTA.  Local 382 has represented the consolidated unit since 1999.

Second, the current standard practice throughout the nation demonstrates that consolidation of bus and light rail employees is typically appropriate.  The cities of Los Angeles, St. Louis, Baltimore, San Jose, Houston, Denver, Portland, and Sacramento have bargaining units composed of both bus and light rail employees. [Aple. Supp. App. at 7.] *See St. Louis Pub. Serv. Co.*, 77 N.L.R.B. 749 (1948) (finding appropriate a system-wide unit of bus and streetcar employees); *cf. Inter-Ocean Steamship Co.*, 107 N.L.R.B. 330, 332 (1953) (finding that a bargaining unit must be composed of all ships in an oceanic transport to be appropriate).

But, more importantly, nothing in the formation of UTA's current bargaining unit demonstrates an impairment to collective bargaining rights.  The parties engaged in good faith negotiations on multiple occasions.  *See Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 863 (D.C. Cir. 2006) ("Then, as now, collective bargaining [is] universally understood to require, at a minimum, *good faith negotiations . . . .*"); *Donovan*, 767 F.2d at 951 (noting that the "continuation of collective bargaining rights" as used in § 13(c) requires that employees, "at a minimum, . . . are entitled to be represented in meaningful, 'good faith' negotiations with their employer over wages, hours and other terms

and conditions of employment."). The original bargaining agreement was created after extensive negotiations over the span of four years. Similarly, the most recent agreement involved extensive discussions, lasting nearly a year, which recognized the objections made by a subset of TRAX employees. Indeed, appellants' concern over seniority was taken into account and a task force to study the issue was created. Finally, both the original and subsequent bargaining agreements were ratified by a majority of UTA employees. *Cf.* 49 U.S.C. § 5333(b)(1) (requiring that the protective arrangements be "fair and equitable").

### b. Federal Labor Law Doctrines—Accretion and Severance

The district court reached the same conclusion applying federal labor law principles. In determining whether a bargaining unit is appropriate under federal law, courts have looked to two basic fact patterns. The first pattern, known as accretion, occurs when new employees or present employees in new jobs are absorbed, without an election, into an existing bargaining unit. The second, known as severance, occurs when a group of employees splits off from an existing bargaining unit because material changes in their job structure have made the existing unit inappropriate.

Appellants urged that accretion is the appropriate framework under which to analyze their situation; the court found the circumstances made the severance framework appropriate. Applying that framework, the court found no violation of

bargaining rights. We agree with the district court.[2]

An accretion "occurs when new employees, or present employees in new jobs, perceived to share a sufficient community of interest with existing unit employees, are added to an existing bargaining unit without being afforded an opportunity to vote in a union election." *NLRB v. Superior Prot., Inc.*, 401 F.3d 282, 287 (5th Cir. 2005); *see Frontier Tel. of Rochester, Inc.*, 344 N.L.R.B. No. 153, 2005 WL 1827781, at *2 (2005) (noting that "accreted employees are absorbed into an existing bargaining unit without an election or other demonstrated showing of majority status."). Typically in these circumstances, a

---

[2] We doubt federal labor doctrine even applies here. The National Labor Relations Act (NLRA) does not govern this dispute because state law and a state agency are involved, and accretion as well as severance are merely procedural tools used by the National Labor Relations Board to judge whether a bargaining unit satisfies the standards set forth in NLRA. *See* 29 U.S.C. § 152(2); Utah Code Ann. § 34-20-2(5); *see also Jackson Transit Auth.*, 457 U.S. at 27–29 (noting that § 13(c) does not supercede state law and leaves intact the exclusion of local government employers from NLRA); *see generally* Robert A. Gorman & Matthew W. Finkin, *Labor Law* § 5.2 (2d ed. 2004). While Congress clearly intended "that federal labor policy would dictate the substantive meaning of collective bargaining for purposes of [UMTA]," *Donovan*, 767 F.2d at 950, it "did not intend to subject local government employers to the precise strictures of the NLRA." *Id.* at 949. To the contrary, Congress made a reasoned decision to incorporate only the most fundamental substantive tenets of federal labor policy.

Consequently, we are skeptical of analyzing the plain language of § 17A-2-1031 through this framework. Neither the plain language of the statute requires it, nor does the legislative intent behind the statute suggest it. Section 17A-2-1031 was enacted to meet the requirements of UMTA and to ensure the receipt of federal aid for Utah's public transportation system. If UMTA does not require analysis of these doctrines, then neither should § 17A-2-1031.

-14-

smaller group of employees is cast against its will into a larger, preexisting group of employees. *Staten Island Univ. Hosp. v. NLRB*, 24 F.3d 450, 455 (2d Cir. 1994). This occurs most frequently when an employer acquires a new facility, and attempts to add the new employees at this facility, without an election, to a preexisting bargaining unit. *Superior Prot.*, 401 F.3d at 287 n.5; *see Nott Co., Equip. Div.*, 345 N.L.R.B. No. 23, 2005 WL 2115868, at *6 (2005) (noting that accretion principles are normally applied in circumstances in which groups of represented and unrepresented employees are consolidated).

Accretion is allowed *only* where the accreted employees have no true identity distinct from the existing unit and share an overwhelming community of interest with that unit. *Balt. Sun Co. v. NLRB*, 257 F.3d 419, 427 (4th Cir. 2001); *Frontier Tel.*, 344 N.L.R.B. at *8 n.6. Because of concern that accreted employees do not have an opportunity to vote on their representation, the burden rests on the union to make this showing. *See NLRB v. Coca-Cola Bottling Co.*, 936 F.2d 122, 126 (2d Cir. 1991).

In contrast, a severance occurs when "changes in job structure are so significant that the existing bargaining unit, including the affected employees, is no longer appropriate." *NLRB v. Ill.-Am. Water Co.*, 933 F.2d 1368, 1375 (7th Cir. 1991). Severance is viewed as the converse of accretion: a group of employees either wishes to split off from the larger group in an existing

-15-

bargaining unit or the employer claims that a group of employees should be excluded from a bargaining unit due to technological or organizational change. *See* Robert A. Gorman & Matthew W. Finkin, *Labor Law* § 5.2(c) (2d ed. 2004). The burden rests on the party requesting severance to "show sufficient dissimilarity" to warrant the change to the bargaining unit. *Ill.-Am. Water*, 933 F.2d at 1375 (quotation omitted). Because severance is typically permitted only where the bargaining history in the larger unit is not notable or compelling, severance is rarely granted. N. Peter Lareau, *Labor and Employment Law* § 35.03[4] (2006); *see NLRB v. Catalytic Indus. Maint. Co.*, 964 F.2d 513, 519 (5th Cir. 1992) (noting that the NLRB is reluctant "to disrupt an established stable bargaining relationship.").

After reviewing the record, we are compelled to agree with the district court that severance best describes the situation here. First, appellants' objection to their inclusion in the bargaining unit arose nearly six years after the alleged accretion occurred. An accretion occurs, if at all, when the new position is created and the bargaining unit is extended to it. In contrast, severance occurs some time after the creation of the position, when it becomes clear that the bargaining unit is no longer appropriate due to changes in job structure. *Cf. Gibbs & Cox, Inc.*, 280 N.L.R.B. 953, 954 (1986) (refusing to assess a bargaining unit "from the vantage of any period of time but the one presently under

consideration.").

Second, this case involves employees previously represented by the same bargaining unit. Accretion generally involves employees, whether new or transferred, that are added to an existing bargaining unit, not employees that are retained within the same bargaining unit.

Third, the circumstances here do not resemble a typical accretion claim. Accretion involves a group being cast against its will into another group. That is simply not the case with the light rail employees—the original bargaining agreement was first ratified by the bus employees, who benefitted from the provision of the agreement allowing for transfer. And, the subsequent bargaining agreement was ratified by both bus and light rail employees. The instant facts, therefore, more closely resemble the typical severance case—a smaller group of employees, who previously approved of their inclusion with the existing bargaining unit, now requests to form a separate bargaining unit due to changed circumstances.

It is true that the doctrine of accretion has been applied where an employer staffs a new facility by transferring employees from an existing facility. However, even assuming the situation here can be characterized as a transfer to a new facility, there is a presumption of continued support of the union (and consequently that the employer is obligated to continue bargaining with the union)

-17-

where the majority of employees in the new facility are transferees from the original bargaining unit. *Gitano Group*, 308 N.L.R.B. 1172, 1175 (1992); *see U.S. Tsubaki, Inc.*, 331 N.L.R.B. 327 (2000) (applying the *Gitano* presumption). Therefore, even were we to apply an accretion standard here, the burden rests on the appellants to overcome this presumption, and they have failed to do so.

The district court's conclusion is consistent with case law interpreting these doctrines. In applying severance principles, six non-exclusive factors are used to assess when severance from an existing bargaining unit should be permitted: (1) the homogeneity or distinctive character of the proposed unit; (2) the history of collective bargaining within the group; (3) the extent to which the proposed unit has maintained a separate identity during its period of inclusion in the larger group; (4) the history and pattern of collective bargaining in the industry; (5) the degree of integration between the groups; and (6) the qualifications and experience of the bargaining representative. *Mallinckrodt Chem. Works*, 162 N.L.R.B. 387, 397 (1966). However, at all times the key consideration is the history of collective bargaining within the existing unit. *Catalytic Indus. Maint.*, 964 F.2d at 519.

These factors and the undisputed facts clearly support the district court's grant of summary judgment. The majority of TRAX employees, including the appellants, transferred from the bus unit. An "established stable bargaining

relationship" has existed between Local 382 and the consolidated unit since 1999. Local 382 has been the bargaining representative for UTA and its predecessors and, consequently has represented all mass transit workers in Utah, since 1904. Finally, industry practice is to consolidate mass transit employees into a single bargaining unit.

Nonetheless, appellants argue that this issue should not be resolved on summary judgment since a determination of appropriateness is a necessarily fact-intensive inquiry. We disagree. Summary judgment is appropriate where there are no disputed issues of *material* fact. As we have explained, the undisputed facts before us are more than ample to find the bargaining unit appropriate for purposes of Utah Code § 17A-2-1031 under any standard we apply.

* * * * *

In sum, we hold that appellants' claim against UTA fails under both UMTA and the Public Transit District Act. First, because we find that UMTA does not create a federal cause of action against state transit recipients, appellants do not state a claim under UMTA. Second, we hold that appellants' claim under Utah Code § 17A-2-1031 is legally insupportable under either our primary analysis or the district court's alternative analysis.[3]

---

[3] Because we find that the district court's grant of summary judgment was proper, we agree with both appellants and Local 382 that the district court exercised its discretion in dismissing the state-based claim against Local 382 for

(continued...)

-19-

## B. *Certification Claim against DOL*

DOL certified UTA's bargaining unit in 2001. Appellants argue that the certification violated DOL's duty under UMTA. The district court dismissed the action against DOL for failure to state a claim, noting that appellants "failed to plead or otherwise allege that the agency had any knowledge or information regarding the current labor dispute when it made the challenged certification decision in October 2001." Aplt. App. B. at 282–83.

After reviewing de novo the district court's dismissal of appellants' claim against DOL pursuant to Federal Rule of Civil Procedure 12(b)(6), we find no violation. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). States must only preserve "the essence of federally-defined collective bargaining rights," *Donovan*, 767 F.2d at 950–51, by ensuring both that the state's protective arrangements are "fair and equitable" and that they provide for the "continuation of collective bargaining rights." 49 U.S.C. § 5333(b). In other words, employees, "at a minimum, . . . are entitled to be represented in meaningful, 'good faith' negotiations with their employer over wages, hours and other terms and conditions of employment." *Donovan*, 767 F.2d at 951. As we previously found,

----

[3](...continued)
lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004) (approving dismissal of state law claims for lack of subject matter jurisdiction after summary judgment was granted as to all federal claims).

UTA has met this standard.  Accordingly, we find no error in DOL's certification of UTA's protective arrangements in 2001 and 2005.

### C. *Lack of Discovery*

Before the district court granted summary judgment, appellants had requested discovery on the following issues: (1) whether Local 382 enjoyed majority support; (2) whether John Inglish, UTA General Manager, gave special benefits to the union president for favorable treatment during negotiations; and (3) whether safety has been compromised as a result of representation by Local 382. [Aplt's App. at 146–48].  The district court denied discovery, noting that appellants failed to demonstrate a sufficient nexus between the information they hoped to discover and UTA's motion for summary judgment.

We review a district court's denial of a Rule 56(f) motion for abuse of discretion.  *Bliss v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006).  Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing [a motion for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The central tenet of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d

779, 783 (10th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). However, Rule 56(f) relief is not automatic. The affidavit must identify "the probable facts not available and what steps have been taken to obtain these facts." *Id.* (quotation omitted). Additionally, it must "state[] with specificity how the additional material will rebut the summary judgment motion." *Bliss*, 446 F.3d at 1042 (quotation omitted).

While the appellants' affidavit briefly lists the additional discovery they believe necessary, it fails to do so with any specificity, *see id.*, and with any hint of what facts such discovery is expected to unearth. *See Price*, 232 F.3d at 783. Appellants argue that discovery is necessary as to whether Local 382 enjoys majority support. But considering the undisputed evidence showing a majority of UTA employees ratified both the 1999 and 2004 collective bargaining agreements, additional discovery would be of marginal utility. Based on the affidavit's lack of specificity and its questionable relevance to the motion for summary judgment, we find no abuse of discretion. *See Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1496 (10th Cir. 1993) (finding no abuse where district court denied Rule 56(f) motion on grounds of relevance).

**D.  *Motion to Amend***

Minutes before midnight on August 14, 2005, appellants filed a motion to amend pursuant to Rule 15(a). The district court did not act on the motion. We

see no error.

"Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void." *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987); *see Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). Here, appellants filed a notice of appeal on August 22. This appeal immediately divested the district court of jurisdiction, except over collateral matters. *See Lancaster*, 149 F.3d at 1237 (noting that district courts retain jurisdiction over collateral matters). Because the motion to amend was not collateral, the district court had no jurisdiction to act on the motion.

### III. Conclusion

Accordingly, we AFFIRM the district court's dismissal of appellants' claims against DOL, Local 382, and John Inglish; AFFIRM the district court's grant of summary judgment for UTA; and DENY as moot appellants' appeal of the denial of the motion for a preliminary injunction.